# UNITED STATES DISTRICT COURT
## MIDDLE DISTRICT OF FLORIDA
### ORLANDO DIVISION

SURGERY CENTER OF VIERA, LLC,

    Plaintiff,

v.                                                     Case No: 6:19-cv-2110-Orl-22DCI

CIGNA HEALTH AND LIFE
INSURANCE COMPANY, SAMMONS
CORPORATION and SAMMONS
CORPORATION MEDICAL EXPENSE
BENEFIT PLAN,

    Defendants.

## ORDER

This cause comes before the Court on the Motion to Dismiss filed by Defendants Cigna Health and Life Insurance Company ("Cigna"), Sammons Corporation Medical Expense Benefit Plan ("the Plan"), and Sammons Corporation ("Sammons Corporation") (collectively with Cigna and the Plan, "Defendants"). (Doc. 14). Plaintiff Surgery Center of Viera, LLC ("Surgery Center") filed a Response in opposition. (Doc. 25). The Motion is ripe for review. For the foregoing reasons, the Motion will be granted in part and denied in part.

### I. BACKGROUND

The dispute in this case arises from $285,123.00 worth of medical services for back pain rendered to a Patient D.B. on November 4, 2016 at Surgery Center of Viera. (Doc. 1 at 4). On December 19, 2016, Cigna paid a claim for the medical services totaling $126,387.25, less than half of the balance due. (*Id.* at 5). Surgery Center alleges that Cigna's underpayment is based on a bill review and the resulting reduction in benefits for prosthetic implants. (*Id.*). Although Surgery Center was an out of network provider, it alleges that Cigna should have used the contracted 80%

rate from Cigna's agreement with Preferred Medical Claim Solutions ("PMCS"), a third-party, to secure discounted rates from providers like Surgery Center to reimburse it the agreed 80% amount, in this case equaling $233,620.20. (*Id.* at 7). Considering the amount previously paid by Defendants, Surgery Center states that this leaves an outstanding balance of $107,232.95. (*Id.*).

On November 4, 2019, Surgery Center brought its four-count Complaint, including a claim to compel production of the administrative record and statutory penalties for failure to produce it – under the Employee Retirement Income Security Act ("ERISA") (Count One), and under state law for breach of contract (Count Two), unjust enrichment (Count Three), and quantum meruit (Count Four). In addition to the claim falling under ERISA and § 1331 federal question jurisdiction, Surgery Center alleges diversity jurisdiction over the state law claims under 28 U.S.C. § 1332, with the amount in controversy exceeding $75,000.00 and diversity of citizenship.

A limited liability company is a citizen of any state of which a member of the company is a citizen. *See Rolling Greens MHP, PL v. Comcast SCH Holdings LLC*, 374 F.3d 1020, 1022 (11th Cir. 2004). A corporation is a citizen of (1) its state of incorporation; and (2) the state where it has its principal place of business. 28 U.S.C. § 1332(c)(1). *Hertz Corp. v. Friend*, 559 U.S. 77, 130 S.Ct. 1181, 1192-93, 175 L.Ed.2d 1029 (2010) (the "principal place of business" for a corporation is its nerve center: "the place where a corporation's officers direct, control, and coordinate the corporation's activities"). Surgery Center alleges that it is a Florida limited liability company and a citizen of Florida because its members are citizens of Florida.[1] Surgery Center further alleges that Cigna is a citizen of Connecticut because it is incorporated and has its principal place of business in Connecticut and that Sammons Corporation is a citizen of Texas with its incorporation and principal place of business in Texas.

---

[1] Surgery Center alleges LLC members are domiciled in Florida. Citizenship is equivalent to "domicile" for purposes of diversity jurisdiction. *McCormick v. Aderholt*, 293 F.3d 1254, 1257 (11th Cir. 2002) (citing *Hendry v. Masonite Corp.*, 455 F.2d 955, 955 (5th Cir. 1972)).

## II. LEGAL STANDARD

When deciding a motion to dismiss based on failure to state a claim upon which relief can be granted, the court must accept as true the factual allegations in the complaint and draw all inferences derived from those facts in the light most favorable to the plaintiff. *Randall v. Scott*, 610 F.3d 701, 705 (11th Cir. 2010). "Generally, under the Federal Rules of Civil Procedure, a complaint need only contain 'a short and plain statement of the claim showing that the pleader is entitled to relief.'" *Id.* (quoting Fed. R. Civ. P. 8(a)(2)). However, the plaintiff's complaint must provide "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L. Ed. 2d 868 (2009) (citing *Twombly*, 550 U.S. at 556). Thus, the Court is not required to accept as true a legal conclusion merely because it is labeled a "factual allegation" in the complaint; it must also meet the threshold inquiry of facial plausibility. *Id.*

## III. ANALYSIS

Defendants move to dismiss Surgery Center's Complaint, arguing that the ERISA claim for statutory damages based on failure to produce the administrative record fails because the obligation to provide copies of documents relevant to Surgery Center's claim is not among ERISA's statutory requirements. Defendants also argue that Surgery Center's three state law claims are defensively preempted by ERISA.

*A. Count One*

Surgery Center's first count asserts an ERISA claim seeking a penalty for failure to produce the administrative record. *See* 29 U.S.C. § 1132(c)(1), 1024(b); 29 C.F.R. § 2575.502c-1. Surgery Center alleges that it sent Cigna multiple letters requesting the administrative record for Patient

D.B.'s medical claim. Surgery Center alleges that all Defendants are responsible for production of the administrative record.

Title 29 U.S.C.A. § 1024(b)(4) requires the administrator to furnish, upon a plan participant's written request, "a copy of the latest updated summary, plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated." Title 29 U.S.C. § 1132(c)(1) states that any administrator who fails or refuses to comply with a request for any information which such administrator is required to furnish to a participant or beneficiary by mailing the material requested within 30 days of a request may be personally liable to such participant or beneficiary in the amount of up to $100 a day from the date of such refusal. Federal regulations have increased that number to $110 a day. *See* 29 C.F.R. § 2575.502c-1.

Surgery Center attaches to its Complaint a copy of the letter to Cigna dated January 16, 2019 requesting, among other things, the complete copies of all plan documents, copies of all correspondence exchanged between the carrier and the insured regarding the subject medical services, identification of all policy and plan language upon which the claim decision was based, contact information for any medical professionals enlisted by the carrier regarding the subject medical services, transcripts and audio recordings of any recorded statements or phone calls between the carrier and the insured regarding the medical services, all guidelines, manuals, written protocols, and medical treatises upon which the carrier partially or wholly based its claim decisions. (Doc. 1-3 at 3). Surgery Center specifically states in its Complaint that it requested the administrative record or relevant documentation in relation to Patient D.B.'s medical services "mainly (but not entirely) to learn [D]efendants' reasons for the subject underpayment/failure to pay." (Doc. 1 at 9).

Defendants argue that the documents Surgery Center requested did not govern the operation of the healthcare plan such that a failure to produce them would allow for a per-diem penalty. Defendants contend that the documents Surgery Center requested more appropriately fall under 29 C.F.R. § 2560.503-1(h)(2) which requires that a "claimant shall be provided, upon request and free of charge, reasonable access to, and copies of, all documents, records, and other information relevant to the claimant's claim for benefits." Under 29 C.F.R. § 2560.503-1(m)(8), documents relevant to the claims determination include documents "relied upon in making the benefit determination" and documents (ii) "submitted, considered, or generated in the course of making the benefit determination." Failure to provide the documents under § 2560.503-1(m)(8), unlike under Title 29 U.S.C. § 1132(c)(1), are not subject to a per-diem penalty.

Surgery Center's request for documents and correspondence related to the denial of coverage go beyond what is required to be produced under ERISA. "Section 1132(c) does not authorize penalties in connection with any and all types of information requested by the participant." *Giertz-Richardson v. Hartford Life & Acc. Ins. Co.*, No. 8:06-cv-1874-T-24-MAP, 2007 WL 1099094, at *1 (M.D. Fla. Apr. 10, 2007). Rather,

> it refers specifically to a plan administrator's failure or refusal to provide the documents identified in Section 1024 [of ERISA], namely the latest updated summary plan description, and the latest annual report, any terminal report, the bargaining agreement, trust agreement, contract, or other instruments under which the plan is established or operated.

*Id.* Further, because § 1024 "specifically enumerates the types of documents" to which § 1132(c) applies, "penalties cannot be imposed for failure to provide documents other than those identified." *Id.* (internal quotation marks omitted).

Sammons Corporation and Cigna argue that because the claim pertains to Cigna specifically, claims administrators cannot be subject to penalties for failure to produce plan documents. An "administrator" under ERISA is "the person specifically so designated by the terms

of the instrument under which the plan is operated," or in the absence of such a designated person, the plan sponsor. 29 U.S.C. § 1002 (16)(A)(i-ii). The Eleventh Circuit has distinguished an "administrator" under ERISA, commonly referred to as a plan administrator, from a "claims administrator," a third-party service provider engaged to provide administrative services on behalf of the plan sponsor. *Smiley v. Hartford Life and Acc. Ins. Co.*, 610 F. App'x 8 (11th Cir. 2015).[2] The healthcare plan attached to Surgery Center's Complaint states that Sammons Corporation is the plan administrator. (Doc. 1-1 at 57).

Surgery Center alleges that it sent Defendants multiple letters and requests for the administrative record and relevant documentation in relation to Patient D.B.'s claim. Surgery Center attached to the Complaint one letter, sent only to Cigna, which requested the document production. Surgery Center claims that although Cigna is the party responsible for the production of the administrative record, the request for the record was also sent to Sammons Corporation and the Sammons Plan by requesting, in the letter sent to Cigna, that it "promptly forward our administrative record production request" to the party responsible if it was not Cigna.

The Surgery Center has failed to allege that it sufficiently requested the information from the Sammons Defendants Sammons Corporation and the Plan specifically or that Cigna had some sort of duty to forward the Surgery Center's request to Sammons. Surgery Center cannot state a claim for statutory penalties for failure to produce the requested plan documents when it has requested documents outside the statutory requirements *and* requested the documents from the wrong party.

In its Response, however, Surgery Center again argues that all parties are subject to Count One and that the determination of which party was a plan administrator is premature at this stage

---

[2] Unpublished opinions of the Eleventh Circuit constitute persuasive, and not binding, authority. *See* 11th Cir. R. 36-2 and I.O.P. 6.

of the litigation. Surgery Center alleges that although the healthcare plan expressly states that Sammons Corporation is the plan administrator, Cigna acted as the *de facto* plan administrator such that it can also be held liable for failure to produce the administrative record.

"The *de facto* plan administrator doctrine has been employed in cases where an employer establishes an ERISA plan and then engages a third-party service provider to administer claims, while retaining at least partial control over the claims administration process." *See Atherley v. United Healthcare of Florida, Inc.*, No. 2:17-CV-332-FTM-99CM, 2017 WL 5157843, at *2 (M.D. Fla. Nov. 7, 2017) (citing *Hamilton v. Allen-Bradley Co., Inc.*, 244 F. 3d 819, 824 (11th Cir. 2001). "The common thread in cases concerning the *de facto* plan administrator doctrine is that the Court must engage in a factual analysis before reaching a conclusion as to who may properly be considered the plan administrator." *Id.*; *See, e.g., Hamilton*, 244 F.3d at 824 (finding that an employer retained sufficient control to be considered a plan administrator where it required employees to obtain applications for disability from its human resources department). As Surgery Center points out in its Response, such a factual inquiry is not permitted at the motion to dismiss stage.

In its Complaint, however, Surgery Center failed to allege any facts that Cigna was the correct party to whom to send the production request or that Cigna owed a duty to forward the request to Sammons Corporation. Surgery Center has also failed to allege that the requested plan documents fall under the specific category of documents allowed under § 1024.[3] Thus, Surgery Center has failed to state a claim for statutory penalties under ERISA. Count One, therefore, is dismissed with prejudice.

---

[3] Importantly, § 1132(c), which allows the administrative penalties for failure to produce the documents allowed under § 1024, is "meant to be in the nature of punitive damages, designed more for the purpose of punishing the violator than compensating the participant or beneficiary." *Scott v. Suncoast Beverage Sales, Ltd.*, 295 F.3d 1223, 1232 (11th Cir. 2002). Such penalties, even when brought against the correct party, are within the discretion of the judge to grant.

*B. Counts Two, Three, and Four*

The remaining three counts of Surgery Center's Complaint are three state law claims for breach of contract, unjust enrichment, and quantum meruit. Surgery Center argues that all Defendants provided health insurance to Patient D.B. and that the governing PCMS contract covered the subject medical services which "should have been paid out." Surgery Center asserts that all Defendants had a duty to properly investigate the subject medical services and fully compensate Surgery Center, pursuant to the 80% rate provided in the PCMS contract, for the services rendered and that failure to do so was a breach of contract. Surgery Center contends that it conferred a direct benefit upon all Defendants by providing the patient with medical services and that Defendants have not paid the proper value of the benefit conferred. Surgery Center similarly argues that it is entitled to reasonable compensation for the services provided and that Defendants' failure to pay would be inequitable.

*1. Preemption*

Defendants move to dismiss Surgery Center's state law claims arguing that all of the state law claims are preempted by ERISA and, alternatively, they also fail as a matter of law. Defendants argue that defensive preemption under ERSIA applies to the instant case because the state law claims "relate to" the administration of an ERSIA plan. Surgery Center responds that the dispute alleged revolves entirely around how much compensation Defendants afforded to Surgery Center regarding the medical services provided to the subject patient.

ERISA litigation is one of the few federal statues under which "two types of preemption may arise: conflict preemption and complete preemption." *Connecticut State Dental Ass'n v. Anthem Health Plans, Inc.*, 591 F.3d 1337, 1343 (11th Cir. 2009). "Conflict preemption, also known as defensive preemption, is a substantive defense to preempted state law claims." *Id.* (citing *Jones v. LMR Int'l, Inc.*, 457 F.3d 1174, 1179 (11th Cir. 2006)). "This type of preemption arises

from ERISA's express preemption provision, § 514(a), which preempts any state law claim that 'relates to' an ERISA plan." 29 U.S.C. § 1144(a).

Complete preemption, "also known as super preemption, is a judicially-recognized exception to the well-pleaded complaint rule." *Connecticut*, 591 F.3d at 1344. "It differs from defensive preemption because it is jurisdictional in nature rather than an affirmative defense." *Id.* (citing *Jones*, 457 F.3d at 1179). "Complete preemption under ERISA derives from ERISA's civil enforcement provision, § 502(a), which has such 'extraordinary' preemptive power that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'" *Id.* (citing *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 64, 107 S. Ct. 1542, 1547, 95 L. Ed. 2d 55 (1987)). Consequently, any "cause[ ] of action within the scope of the civil enforcement provisions of § 502(a) [is] removable to federal court." *Id.* (citing *Taylor*, 107 S.Ct. at 1548). Further, complete preemption exists under § 1132(a) when the following four elements are satisfied: (1) plaintiff's complaint involves a relevant ERISA plan; (2) the plaintiff has standing to sue under the plan; (3) the defendant is an ERISA entity; and (4) the complaint seeks compensatory relief similar to what is available under § 1132(a). *Adventist Health Sys./Sunbelt Inc. v. Blue Cross & Blue Shield of Fla.*, Inc., No. 6:08-CV-1706-ORL-22K, 2009 WL 722303, at *3 (M.D. Fla. Mar. 18, 2009) (Conway, J.) (citing *Butero v. Royal Maccabees Life Ins. Co.*, 174 F.3d 1207, 1212 (11th Cir. 1999)).

"To address whether [a] claim falls within the scope of ERISA, the Eleventh Circuit has adopted a distinction between two types of claims . . . those challenging the 'rate of payment' pursuant to the provider-insurer agreement, and those challenging the 'right to payment' under the terms of an ERISA beneficiary's plan." *Sheridan Healthcorp, Inc. v. Aetna Health Inc.*, 161 F. Supp. 3d 1238, 1245 (S.D. Fla. 2016) (citing *Borrero v. United Healthcare of N.Y., Inc.*, 610 F.3d 1296, 1302 (11th Cir. 2010)). As Surgery Center points out in its Response, the state law claims

are "rate of payment" claims and thus are not preempted by ERISA. "Right of payment claims fall within the scope of ERISA. Rate of payment claims do not." *La Ley Recovery Sys.-OB Inc. v. Blue Cross & Blue Shield of Fla., Inc.*, No. 14-23417-CIV, 2014 WL 5523147 at *3 (S.D. Fla. Oct. 31, 2014).

Surgery Center's claims are "more akin to a rate of payment dispute" because Surgery Center "does not allege that Defendants *failed* to pay, but rather that Defendants grossly *underpaid*" for services rendered. *See, e.g., REVA, Inc. v. HealthKeepers, Inc.*, No. 17-24158-CIV, 2018 WL 3323817, at *3 (S.D. Fla. July 6, 2018) (emphasis in original). "The distinction between rate of payment and right to payment, therefore, is whether the claims are payable at all. While a rate of payment challenge does not necessarily implicate an ERISA plan, a challenge to the right to payment under an ERISA plan does." *Gables Ins. Recovery v. United Healthcare Ins. Co.*, 39 F. Supp. 3d 1377, 1384 (S.D. Fla. 2013) (citing *Borrero*, 610 F.3d at 1302).

Further, as Defendants note in their Motion to Dismiss, the common allegations of the Complaint reference the "Maximum Reimbursable Charge" provision of the healthcare plan. This provision provides that services by out-of-network providers such as Surgery Center will be paid at the lesser of either the provider's normal charge for a similar service or at a policy holder-selected percentile of charges. As explained in the *ERISA Litigation*:

> Services rendered for out-of-network providers are commonly tied to the [external] rate schedules and arrangements included in provider agreements. These claims are not preempted because they are construed as independent contractual obligations between the provider and the PPO or the benefit plan. Essentially, they are breach of contract claims that challenge payment under a provider agreement.

Jane E. Zanglein, et al., *ERISA Litigation* at 28-9 (6th ed. 2017) (citing cases); *see Kelsey-Seybold Medical Group PA v. Great-West Healthcare of Texas, Inc.*, 611 F. App'x 841 (5th Cir. 2015) (holding that if the issue is whether claims were paid at a proper contractual rate ERISA preemption does not apply); *see also Adventist Health System/Sunbelt Inc. v. Blue Cross & Blue*

*Shield of Florida, Inc.*, No. 6:08-CV-1706-ORL-22K, 2009 WL 722303, at *1 (M.D. Fla. Mar. 18, 2009) (Conway, J.) (adopting report and recommendation that found healthcare provider plaintiff's claims for breach of third party beneficiary contract, unjust enrichment, and quantum meruit were not preempted by ERISA).

Thus, Surgery Center's claims do not necessarily implicate an ERISA plan, and they are not defensively preempted. The Court now turns to Defendant's arguments to dismiss Surgery Center's claims on the merits.

*2. Breach of contract, unjust enrichment, and quantum meruit*

Defendants move to dismiss the three state law claims arguing that each fails as a matter of law. Surgery Center argues that the balance for Patient D.B.'s medical services should have been paid out pursuant to the re-pricing rates prescribed in the governing contract with PMCS and that Cigna's failure to do so was a breach of the contract. Defendants argue that the PMCS agreement cannot be the basis of a breach of contract action because only Surgery Center and PMCS were parties to the contract—and the Defendants were not. Surgery Center responds that Cigna was clearly listed as a provider under the contract and that they cannot now disclaim some contractual relationship with PMCS.

Under Florida law, to state a claim for breach of contract, a plaintiff must allege "(1) the existence of a contract, (2) a breach of the contract, and (3) damages resulting from the breach." *Beck v. Lazard Freres & Co.*, LLC, 175 F.3d 913, 914 (11th Cir. 1999). Further, to state a claim for quantum meruit or unjust enrichment, a plaintiff "must allege (1) the plaintiff conferred a benefit on the defendant, (2) the defendant had knowledge of the benefit, (3) the defendant accepted or retained the benefit conferred, and (4) the circumstances indicate that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Dyer v. Wal-Mart Stores, Inc.*, 535 F. App'x 839, 841-842 (11th Cir. 2013) (citing *Merle Wood & Assocs. v.*

*Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013)). Under "quantum meruit, services must be performed under circumstances fairly raising a presumption that the parties understood and intended compensation to be paid." *Id.* at 842.

Surgery Center has sufficiently pled what is necessary at this juncture to state a claim for breach of contract. In its Complaint, Surgery Center alleges it had an agreement with PMCS prescribing the 80% rate for the listed providers including Cigna, that Cigna did not pay the 80% rate agreed to in the contract, and that they have suffered damages because of the breach. It is sufficient that Surgery Center alleges in the Complaint and references in its Response that Cigna had a contractual relationship with PMCS and that PMCS procured discounted rates from Surgery Center on Cigna's behalf. These allegations, when read in the light most favorable to Surgery Center, are facially plausible. Surgery Center has alleged facts that allow the Court to draw the reasonable inference that a failure to pay the 80% rate agreed to in the PMCS contract may have been a contractual violation. (*See Twombly*, 550 U.S. at 556).

Surgery Center argues, in the alternative to its claim for breach of contract, that it conferred a direct benefit upon Defendants by providing Patient D.B. with medical services such that Defendants' failure to pay the full balance would unjustly enrich Defendants. "Florida law prescribes four elements for quantum meruit and unjust enrichment claims." *Merle Wood & Assocs., Inc. v. Trinity Yachts, LLC*, 714 F.3d 1234, 1237 (11th Cir. 2013) (citing *Commerce P'ship 8098 Ltd. P'ship v. Equity Contracting Co., Inc.*, 695 So.2d 383, 386 (Fla. 4th DCA 1997) (en banc); *see also Babineau v. Fed. Express Corp.*, 576 F.3d 1183, 1194 (11th Cir. 2009)). The (1) plaintiff must have conferred a benefit on the defendant; (2) the defendant must have knowledge of the benefit; (3) the defendant must have accepted or retained the benefit conferred; (4) and the circumstances "must be such that it would be inequitable for the defendant to retain the benefit without paying fair value for it." *Id.* (internal citations omitted).

The Court agrees with Defendants that the general rule in Florida is that a party cannot pursue recovery under an equitable theory where it is proven that an express contract exists. *Hazen v. Cobb*, 117 So. 853, 858 (Fla. 1928) ("The law will not imply a contract where a valid express one exists."); *Bowleg v. Bowe*, 502 So.2d 71, 72 (Fla. 3d DCA 1987) (upholding trial court's dismissal of unjust enrichment claim where action could be maintained upon "presumably valid" contract); *Snyderburn v. Moxley*, 652 So.2d 945, 947 (Fla. 5th DCA 1995) ("[W]here an express agreement exists, quantum meruit is not available; the rights and obligations of the parties are governed by the agreement."). However, a claim for unjust enrichment fails only upon proof that an express contract exists. *Williams v. Bear Stearns & Co.*, 725 So.2d 397, 400 (Fla. 5th DCA 1998) ("[U]ntil an express contract is proven, a motion to dismiss a claim for promissory estoppel or unjust enrichment on these grounds is premature."); *Shibata v. Lim*, 133 F. Supp. 2d 1311, 1316 (M.D. Fla. 2000) ("Proof of an express contract between parties to a contract defeats a claim for unjust enrichment."); *ThunderWave v. Carnival Corp.*, 954 F. Supp. 1562, 1566 (S.D. Fla. 1997) (declining to dismiss unjust enrichment claim where Defendant denied existence of express contract).

As the Florida Supreme Court explained in *Hazen v. Cobb*, "it has become quite customary, in an abundance of caution, to join the common counts with the special count which declares on the express contract, so that, if for any reason the plaintiff fails in his proof of express contract, he may have an opportunity to at least recover . . . upon an implied contract." 117 So. at 857-58. Thus, Surgery Center can plead the breach of contract claim as well as the unjust enrichment and quantum meruit claims in the alternative. *See also Empire Corvette of Am., Inc. v. Just Toys Classic Cars, LLC*, No. 6:18-CV-26-ORL-22DCI, 2018 WL 7489867, at *7 (M.D. Fla. May 1, 2018) (holding that a plaintiff "may [plead] in the alternative to a breach of contract claim where one of the parties asserts that the contract governing the dispute is invalid" for some reason).

- 13 -

Defendants also argue that the claims for unjust enrichment and quantum meruit fail as a matter of law because no benefit was conferred on any of the Defendants. Although Defendants rely on several district court opinions that stand for the proposition that a healthcare provider who provides services to an insured does not benefit the insurer, it is well-established that this Court is bound only by decisions of the Eleventh Circuit and the United States Supreme Court. Thus, this Court finds it is not necessary at this stage of the litigation to allege more than what Surgery Center has already alleged—that it provided services that allegedly conferred a benefit, it was not paid the entire balance due for the services, and that it would be inequitable for Surgery Center to not be paid for the services rendered. *See Virani v. Homefield Fin., Inc.*, No. 6:09-CV-511-ORL-22-DAB, 2010 WL 11507411, at *7 (M.D. Fla. May 10, 2010) (Conway, J.) (holding that unjust enrichment claim survived motion to dismiss because the plaintiffs alleged that defendants had been unjustly enriched at the expense of the plaintiffs and that it would be inequitable for defendants to keep the benefits). Surgery Center has sufficiently alleged its claims for unjust enrichment and quantum meruit.

## IV. CONCLUSION

Looking at the four corners of the Complaint, Surgery Center has failed to allege facts that support a claim for administrative penalties under 29 U.S.C. Section 1132(c)(1) and 29 U.S.C. Section 1024(b). Surgery Center has, however, pled facts sufficient to state a claim for breach of contract or, in the alternative, unjust enrichment and quantum meruit; none of these claims are preempted by ERISA.

Based on the foregoing, it is ordered as follows:

1. Defendant's Motion to Dismiss (Doc. 14) is **GRANTED** in part and **DENIED** in part as set forth above.

a. Plaintiff's ERISA claim for statutory penalties under 29 U.S.C. § 1132(c)(1) (Count One) is **dismissed with prejudice**.

   b. The Motion is denied in part as to Plaintiff's state law claims (Counts Two, Three, Four).

2. Defendants are **ORDERED TO FILE** an Answer to the Complaint within fourteen days.

**DONE** and **ORDERED** in Chambers, in Orlando, Florida on February 11, 2020.

*[signature]*
ANNE C. CONWAY
United States District Judge

Copies furnished to:

Counsel of Record